1

PICK & BOYDSTON, LLP
Brian D. Boydston (State Bar No. 155614)
10786 Le Conte Ave.
Los Angeles, CA 90024
(213) 624-1996
(213) 624-9073 fax

2

3

4

Attorneys for Plaintiff WORLDWIDE SUBSIDY GROUP, LLC

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company,

CASE NO. CV14-03682 AB (ASx)

13

Plaintiff,

14

v.

15

16   WORLDWIDE PANTS INCORPORATED, a California corporation, and DOES 1 through 10, inclusive,

17

18                  Defendants.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION**

**HEARING:**

Date:   October 3, 2016
Time:   10:00 a.m.
Place:  Courtroom 4 – 312 N. Spring St.
Judge:  Hon. André Birotte Jr.

19

20

21

Complaint Filed:  April 7, 2014

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

1

2

## TABLE OF CONTENTS

3

Page

**INTRODUCTION**……………………………………………………… 5

4

5

**ARGUMENT**…………………………………………………… 13

6

7

    **A. SEVERAL OF THE ALLEGATIONS MADE BY WORLDWIDE
PANTS ARE DEFAMATORY *PER SE*, AND ABSENT STRIKING
THE OBJECTIONABLE STATEMENTS OR IMPOSING
SANCTIONS, NO RECOURSE EXISTS FOR SUCH
DEFAMATION**……………………………………………… 13

8

9

10

11

    **B. SEVERAL OF THE ALLEGATIONS MADE BY WORLDWIDE
PANTS ARE WHOLLY IRRELEVANT TO ANY ISSUE BEFORE
THE COURT, AND SHOULD BE STRICKEN FROM
WORLDWIDE PANTS' PLEADINGS**………………………….. 15

12

13

14

15

**CONCLUSION**…………………………………………………… 17

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

1

2

## TABLE OF AUTHORITIES

3

4

Federal Cases                                                                                    Page(s)

5

Anderson v. Davis Polk & Wardwell LLP, 850 F.Supp.2d 392, 416

6

(SD NY 2012)…………………………………………………….. 15

7

8

Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)…. 16

9

Magill v. Appalachia Intermediate Unit 08, 646 F. Supp. 339, 343

10

(W.D. Pa. 1986)…………………………………………….…… 16

11

Murray v. Sevier, 156 F.R.D. 235, 258 (D. Kan. 1994)…………………….. 16

12

Nault's Automobile Sales, Inc. v. American Honda Motor Co.,

13

148 F.R.D. 25, 29-34 (D.N.H. 1993)………………………………….…… 16

14

Pigford v. Veneman, 215 F.R.D. 2, 4-5 (D.D.C. 2003)……………………… 16

15

Righthaven LLC v. Democratic Underground, LLC, 791 F.Supp.2d 968, 977

16

17

(D NV 2011)……………………………………………………. 15

18

Talbot v. Robert Matthews Distributing Co., 961 F.2d 654, 665

19

(7th Cir. 1992)………………………………………………………... 15

20

Yow v. National Enquirer, Inc., 550 F.Supp.2d 1179, 1183

21

(E.D. Cal. 2008). ……………………..…………………………………… 13

22

23

State Cases

24

Rainier's Dairies v. Raritan Valley Farms, Inc., 19 *N.J.* 552, 562,

25

117 *A.*2d 889 (1955)………………………………………….…… 14

26

27

28

1

2  <u>Zagami, LLC v. Mary Ann Cottrell</u>, 403 N.J. Super. 98, 957 A.2d 691,

3  695 (2008)……………………………………………………………… 14

4

5

6  <u>Statutes</u>

7  California Civil Code Section 45(a)……………………………………. 13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1
2

**INTRODUCTION**

3      From its initial sentence in its Motion for Summary Judgment, filed May 23,

4

5      2016, Defendant Worldwide Pants, Inc. ("WPI") misstates facts, and intentionally

6      seeks to confuse the personal identity of Raul Galaz with Plaintiff Worldwide

7      Subsidy Group ("WSG"), then casts a wide net of brazenly false and incendiary

8

9      accusations regarding Mr. Galaz (and WSG) that have no possible significance to

10     this case.  Unfortunately, the effect of defamatory statements is exponentially

11     magnified by the preservation of such statements, perhaps forever, by their

12

13     electronic publication on the internet.  It is for this reason that WSG seeks to have

14     such defamatory statements, and other statements superfluous to the WPI motion,

15     stricken from WPI's pleadings, and for WPI and its counsel to be sanctioned for

16
       such knowingly false allegations.
17

18     Among other matters, WPI falsely accuses Mr. Galaz of having personally

19     stolen monies from WPI, and having testified to WSG's "theft" of monies from

20
       WPI and "another production company".[1]  As set forth hereafter, such accusations
21

22

23     [1]  According to WPI:

24     "Galaz did not turn over a new leaf after his release from prison [in 2004].
       Instead, he returned to his criminal career as a thief, this time by brazenly
25     stealing television royalties from David Letterman's production company,
       Worldwide Pants Inc.  Galaz admitted under oath during his deposition in
26     this case that WSG misappropriated tens of thousands of dollars from
27
                                                              *(Cont'd on next page)*
28                                      5

are inaccurate for the obvious reason that Mr. Galaz *never* had access to either WPI

monies or the WSG accounts at the time WPI alleges such thefts to have occurred,

Mr. Galaz *never* testified that any "thefts" of funds occurred as WPI alleges, and

WSG can irrefutably establish that the monies for which it accounted to WPI are

no different than the monies received by WSG.  In fact, faced with the foregoing

irrefutable facts set forth in WSG's opposition brief, WPI effectively abandons

such false allegations in its reply brief by failing to assert any response thereto.

Multiple other assertions are made regarding Mr. Galaz that have no conceivable

relation to the issues before the Court, including assertions regarding where Mr.

Galaz lives, his compliance with the terms of his 2002 criminal conviction, the

basis for a private lawsuit brought by Mr. Galaz,[2] etc.

    These statements, all brought to impugn WSG, are at the expense of Mr.

Galaz.  All have no relation to the issues before the Court, and the most severe of

---

*(Cont'd from previous page)*

> Worldwide Pants.  In investigating this case, Worldwide Pants learned that
> over $325,000 more remains missing."

WPI motion at p.1.

[2]   Raul Galaz sued the co-conspirator of his crime for equitable rescission of an
admittedly illegal contract, in order to have payment made *to the victim* of the
criminal conspiracy. **See WSG Controverted and Uncontroverted Facts, filed in
opposition to WPI's Motion for Summary Judgment** ("CF"), **Fact No.27**.

6

which – accusing Mr. Galaz of the theft of no less than $325,000, and having

testified to WSG's "thefts" -- are demonstrably untrue according to evidence in the

possession of WPI prior to filing its motion.  The statements made in WPI's

Motion for Summary Judgment are beyond irresponsible – they were knowingly

false and malicious, and but for the absolute privilege afforded to statements made

in the course of litigation, Mr. Galaz (and WSG) would have a clear, irrefutable

claim for defamation *per se* against WPI, the law firm Gibson, Dunn & Crutcher

LLP, and the individual authors of WPI's Motion for Summary Judgment.

In no uncertain terms, the WPI motion seeks to mischaracterize WSG as the

alter ego of Raul Galaz, and then in an act of "guilt by association", hoist on WSG

the culpability associated with the criminal conviction of its employee for acts

committed almost two decades ago.  Mr. Galaz's conviction, however, bears no

relation to the WSG/WPI lawsuit and, notably, other key facts known to WPI prior

to the filing of its Motion for Summary Judgment disprove the most significant

allegations brought by WPI.  Facts known by WPI prior to the filing of its motion

include:

   ∗ Raul Galaz stipulated in 2002 to a conviction for a single count of mail

   fraud, for acts occurring 1995-1998. Such conviction did not involve WSG,

1

2      preceded the very formation of WSG, and WSG was never accused of

3      having any relation to Mr. Galaz's criminal acts. **CF 62**[3].

4

5

6      ∗ Raul Galaz does not "control" WSG.  Raul Galaz initially co-founded

7      WSG in 1998, but sold all of his interest in WSG in 2002 to his ex-wife and

8
       partner (both of which were already co-owners), and has not been an owner
9
       of WSG, partial or otherwise, since 2002. **CF 63**.
10

11

12
       ∗   From 2002 forward, WSG has been owned and controlled by a variety of
13
       other persons, including Lisa Katona, Marian Oshita, Denise Vernon, and
14

15     Ruth Galaz (1%).  From April 2008 through May 2011, as a result of a legal

16
       dispute between owners Lisa Katona and Denise Vernon, any disputes as to
17
       the activities of WSG were subject to the decision of a designated business
18

19     manager, Brian Boydston (undersigned counsel).  From May 2011 through

20
       November 2011, WSG was placed under the control of a court-appointed
21
       receiver as a result of a legal dispute between owners Lisa Katona and
22

23     Denise Vernon.  Since November 2011, Denise Vernon has been the

24

25     [3]  For the sake of ease, as  noted WSG herein cites to WSG's Controverted and
          Uncontroverted Facts and the exhibits submitted therewith, filed in conjunction
26        with WSG's Opposition to WPI's Motion for Summary Judgment, which cite to
          evidence in the possession of WPI prior to the filing of its motion.
27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

majority owner of WSG, capable of unilaterally controlling its activities. **CF 63**.

∗ In 2008 Raul Galaz began working as an employee for WSG. Raul Galaz has not been a signatory on any WSG bank account since 2002. As such, since 2002, Mr. Galaz has not endorsed or received payments for WSG, nor controls distributions from WSG, nor executes WSG tax returns. **CF 64**.

∗ Neither Raul Galaz nor WSG has misappropriated "over $325,000" from WPI. Literally none of the monies collected by WSG and attributable to WPI are unaccounted for, as the predicate of WPI's statement was to conspicuously omit documents exclusively in WPI's possession *and produced by WPI in discovery* that demonstrate WPI's receipt from WSG of an additional $715,115 from gross collections of $901,307, documents from 1999-2002 that were no longer in WSG's records.[4]

---

[4]   Such financial records comprehensively demonstrate that WSG accounted to WPI for the royalties reported by the CCC as having been distributed to WSG. **CF 45**. WPI omitted financial records in its possession reflecting payment by WSG to WPI from 1999-2002 of $715,115 which, after being grossed up to the amount received by WSG prior to deduction of WSG's commission, equals approximately $900,000. See **Exhibits 20, 21**. Records reflecting such distributions were not in WSG's possession (likely having been lost, misplaced, or destroyed after 15 years) when WSG responded to WPI's document requests

*(Cont'd on next page)*

9

1

2

3

*No distributions occurred during the period between 2002 and 2007. For

4

all distributions from 2007 to the present, a nominal difference exists

5

6

between what was reported by a third party as having been paid to WSG in

7

Canadian dollars ($1,362,247) and what WSG reported to WPI as receiving

8

in U.S. dollars ($1,364,014), a figure easily explained by the difference in

9

10

currency exchange rates. **CF 45**. Consequently, since Mr. Galaz's release

11

from incarceration in 2004, there is not nor ever has been any discrepancy as

12

to the monies accounted to by WSG to WPI, and no basis exists to allege

13

14

that Mr. Galaz "returned to his criminal career as a thief" or that WSG

15

"stole" any monies from WPI.[5]

16

17

*(Cont'd from previous page)*

18

in July, 2015, while such records were in WPI's possession and were first
produced by WPI in discovery in only February 2016.

19

[5]    In the aggregate, WSG has accounted to WPI for approximately $1.8

20

Million, on collections of $2.265 Million. [Collections: $407,000 (**Exhibit 3**) +

21

$901,397 + $1,364,014 (**Exhibit 20**) = $2,265,411; Payments: $2,265,411 -
$60,215 x 80% = $1,764,156.] WPI nevertheless contends that WSG "has not

22

performed on the 2002 agreement". To be clear, when the additional payments

23

reflected by WPI's records are taken into account, ***no discrepancy exists*** between
the amounts paid by the CCC to WSG, and the amounts WSG reported as having

24

been received. As such, while accusing WSG of a massive underaccounting, WPI

25

conspicuously failed to make any representation regarding records in its possession
that reflected additional payments by WSG, clearly trying to mislead the Court.

26

27

*(Cont'd on next page)*

28

10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

1

2

3   * Raul Galaz did not "admit under oath during his deposition" that WSG

4   "misappropriated tens of thousands of dollars" or engaged in a "theft" from

5

6   WPI.  WPI's reference is to monies that WSG collected and openly

7   discussed with WPI, and to which WSG informed WPI that such monies

8   were being withheld as an offset to monies that WPI owed to WSG as to the

9

10  possible breach of its contract with WSG. **CF 48**.[6]

11

12  * Finally, Raul Galaz has not "committed perjury" in royalty proceedings

13  (**CF 58**), "repeatedly violated the terms of the judgment in his criminal

14

15

16

17  _(Cont'd from previous page)_

18

19

20

21  [6]  Correspondence between WSG and WPI, and the testimony of Raul Galaz,
    confirms such facts. **CF 48-49**. As set forth in text _immediately_ preceding the
22  testimony cited by WPI in its motion, Raul Galaz testified that WSG informed
    WPI that it was using the collected monies as an offset for monies that may have
23  been inappropriately collected by WPI, but for which WSG did not yet have
24  dispositive evidence. Id. Notably, WSG's communication with WPI regarding such
    matter in January 2011 did not result in any action by WPI against WSG, nor in the
25  five years following such communications has WPI once raised such withholding
26  as a basis or reason for WPI's refusal to comply with the WSG/WPI agreement.
27

28                                11

case"[7] "used WSG money to buy a Miami Beach condominium"[8], or stated

that WSG "stole money from another production company"[9].

As should be immediately apparent from evidence presented in WSG's

Opposition to WPI's Motion for Summary Judgment, the text excerpts identified in

---

[7]   The WPI references are to the allegation that Raul Galaz did not report certain of his 2008 income to the U.S. Attorneys Office as part of his restitution obligations. When questioned at his deposition, Mr. Galaz did not recall reporting such income. Nonetheless, publicly available records reflect that Mr. Galaz did report such income. **CF 28, 52**.

The WPI references are also to the obligation of Raul Galaz to continue to report his location of residence to the U.S. Attorneys Office, even after conclusion of his supervised release in 2007. For the last decade, Mr. Galaz had not changed residences. Nonetheless, Mr. Galaz testified that he did not realize that he was obligated to report any new residence post-supervised release, and promptly following such realization, reported his recent change of residence to the U.S. Attorneys Office. **CF 28, 52**.

The terms of Raul Galaz's sentence, and his compliance therewith, are unrelated to the WSG/WPI agreement.  Still, Raul Galaz has fully complied with the terms of his sentence, and no prosecutorial entity has ever asserted otherwise - - even after counsel for WPI contacted such authorities to allege Mr. Galaz's violation of his post-conviction obligations. **CF 28, 52**.

[8]   Mr. Galaz does not, nor ever has, owned a Miami Beach condominium paid for with WSG funds. **CF 67**.

[9]   The WPI reference is to a matter between WSG and a former client whereby WSG timely and properly remitted an accounting and payment to its client. Such client subsequently demanded that WSG not receive a commission for the collected funds, and altogether refused to cash WSG's check.  A representative of WSG's former client, at the urging of WSG's adversaries in administrative proceedings in Washington, D.C., testified at length about such matter in a 2014 hearing before the Copyright Royalty Board, which tribunal notably ignored the contentions of such party that WSG had engaged in any wrongdoing.  **CF 50.** No subsequent allegation of wrongdoing has been made by WSG's former client.

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

the attached **Exhibit A** which appear in WPI's motion and separate statement of

"uncontroverted facts" are either demonstrably untrue or have no relation to the

issues before the Court, or both.  For the reasons set forth herein, such text should

be stricken from WPI's Motion for Summary Judgment, which document should

be refiled without such references.

### ARGUMENT

**A. SEVERAL OF THE ALLEGATIONS MADE BY WORLDWIDE PANTS ARE DEFAMATORY *PER SE*, AND ABSENT STRIKING THE OBJECTIONABLE STATEMENTS OR IMPOSING SANCTIONS, NO RECOURSE EXISTS FOR SUCH DEFAMATION.**

As noted, WPI accuses Mr. Galaz (and WSG) of having engaged in the

"theft" of monies owed to WPI and "another production company", i.e., criminal

acts.  A false accusation of a criminal act constitutes defamation *per se*, for which

injury is presumed and need not be proven by the offended party.  See California

Civil Code Section 45(a), and Yow v. National Enquirer, Inc., 550 F.Supp.2d 1179,

1183 (E.D. Cal. 2008).

In light of WSG's submission of evidence demonstrating that WPI's

accusations are false, both Mr. Galaz and WSG could pursue an action against WPI

for defamation *per se*, but for publication of the accusations in a forum that

provides an absolute privilege for defamatory statements.  Notwithstanding, it has

13

been noted that "[i]n strictly judicial proceedings the potential harm which may

result from the absolute privilege is somewhat mitigated by the formal

requirements such as notice and hearing, the comprehensive control exercised by

the trial judge whose action is reviewable on appeal, *and the availability of*

*retarding influences such as false swearing and perjury prosecutions . . .* "

Zagami, LLC v. Mary Ann Cottrell, 403 N.J. Super. 98, 957 A.2d 691, 695 (2008),

citing Rainier's Dairies v. Raritan Valley Farms, Inc.*,* 19 *N.J.* 552, 562, 117 *A*.2d

889 (1955).

Accepting the foregoing means that the absolute privilege exists in part only

because of the "retarding influences such as false swearing and perjury

prosecutions", or similar remedies.  In this case, there was literally no evidence that

Mr. Galaz or WSG had engaged in any malfeasance, yet in its zeal to paint an

unkind picture of WSG, WPI falsely accused both Mr. Galaz and WSG of stealing

hundreds of thousands of dollars from WPI and others.

WSG posits that the remedy requested herein, i.e., a striking of the offending

accusations and/or sanctions imposed on WPI and its counsel, is the minimum

remedy that should be afforded, and imminently reasonable. Absent the imposition

of remedies of such sort, no form of discouragement exists to the making of such

knowingly false accusations.  To that end, WSG respectfully requests that an

appropriate remedy be levied in a form and manner that the Court deems

14

1

2    appropriate.

3

4        **B. SEVERAL OF THE ALLEGATIONS MADE BY WORLDWIDE**

5        **PANTS ARE WHOLLY IRRELEVANT TO ANY ISSUE**
         **BEFORE THE COURT, AND SHOULD BE STRICKEN FROM**

6        **WORLDWIDE PANTS' PLEADINGS.**

7            Similarly, many of the other assertions of Worldwide Pants are irrelevant to

8

9    any issue before the Court, if not additionally established as false.  For example,

10   what possible relevance exists to WPI's allegations regarding where Mr. Galaz

11
     lives, his compliance with the terms of his 2002 criminal conviction, or the basis
12

13   for a private lawsuit brought by Mr. Galaz, etc.  Such superfluous assertions, meant

14   only to impugn, are similarly identified in **Exhibit A** to this motion.

15
             Such assertions are appropriately stricken.  Specifically, courts have held
16

17   that assertions deemed "scandalous" must be stricken, and have defined

18   "scandalous" to include (i) allegations that 'unnecessarily' question a person's

19
     moral character; (ii) allegations that cast a 'cruelly' derogatory light on a person;
20

21   and (iii) vulgar or repulsive allegations that diminish the dignity of the court.  *See*

22   Anderson v. Davis Polk & Wardwell LLP, 850 F.Supp.2d 392, 416 (SD NY 2012),

23
     Righthaven LLC v. Democratic Underground, LLC, 791 F.Supp.2d 968, 977 (D
24

25   NV 2011), and Talbot v. Robert Matthews Distributing Co., 961 F.2d 654, 665 (7th

26   Cir. 1992).  Moreover, the striking of offensive material is particularly appropriate

27

28                                            15

when the offensive material is not responsive to an argument but, rather,

constitutes an inappropriate attempt to abuse the Court's process to attack an

individual personally.  *See*, <u>Magill v. Appalachia Intermediate Unit 08</u>, 646 F.

Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that "reflect adversely on

the moral character ***of an individual who is not a party to this suit***" which were

"unnecessary to a decision on the matters in question"); see also <u>Pigford v.

Veneman</u>, 215 F.R.D. 2, 4-5 (D.D.C. 2003)(striking unfounded accusations that

opposing counsel was racist); <u>Murray v. Sevier</u>, 156 F.R.D. 235, 258 (D. Kan.

1994) (striking allegation that defendant and his counsel "bought off" and paid

"hush money" to prospective witnesses); <u>Cairns v. Franklin Mint Co.</u>, 24 F. Supp.

2d 1013, 1037 (C.D. Cal. 1998) (striking allegation that "defendants are '[l]ike

vultures feeding on the dead'"); and <u>Nault's Automobile Sales, Inc. v. American

Honda Motor Co.</u>, 148 F.R.D. 25, 29-34 (D.N.H. 1993) (noting that "[w]ith each

passing week the pleadings assumed a more hostile and accusatory tone" and

striking scandalous assertions).

　　　While less reprehensible than the making of knowingly false accusations

regarding the commission of criminal acts, WSG posits that the remedy requested

herein, i.e., a striking of the offending accusations and/or sanctions imposed on

WPI and its counsel, is also a reasonable remedy in response to WPI's numerous

superfluous arguments.  Absent the imposition of remedies of such sort, no form of

16

discouragement exists to their making.  To that end, WSG respectfully requests that an appropriate remedy be levied in a form and manner that the Court deems appropriate.

**CONCLUSION**

For the reasons set forth herein, WSG hereby moves the Court to strike text appearing in WPI's motion for summary judgment, and levy an appropriate sanction against WPI and its legal counsel, as the Court deems appropriate.

Dated: September 5, 2016                                     PICK & BOYDSTON, LLP


By_____/s/_____

Brian D. Boydston
Attorneys for Plaintiff
WORLDWIDE SUBSIDY GROUP,
LLC

17