PICK & BOYDSTON, LLP
Brian D. Boydston (State Bar No. 155614)
10786 Le Conte Ave.
Los Angeles, CA 90024
(213) 624-1996
(213) 624-9073 fax

Attorneys for Plaintiff WORLDWIDE SUBSIDY GROUP, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company,<br><br>    Plaintiff,<br><br>    v.<br><br>WORLDWIDE PANTS INCORPORATED, a California corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO. CV14-03682 AB (ASx)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION**<br><br>**HEARING:**<br><br>Date:  October 3, 2016<br>Time:  10:00 a.m.<br>Place:  Courtroom 4 – 312 N. Spring St.<br>Judge:  Hon. André Birotte Jr.<br><br>Complaint Filed: April 7, 2014 |

## INTRODUCTION

In its opposition brief, Worldwide Pants, Inc. ("WPI") doubles-down on its accusations against Raul Galaz through a string of tenuous explanations, in a grasping attempt to convince the Court that there occurred a "technical" "theft" of

WPI monies, and to bring relevance to multiple irrelevant accusations against Mr. Galaz. WPI further raises multiple other accusations,[1] seemingly directed at arguing the merits of its motion for summary judgment rather than addressing the issues related to WSG's motion.[2]

### A. WPI'S ALLEGATION THAT RAUL GALAZ STOLE MONIES FROM WPI HAS BEEN DISPROVEN, WAS KNOWINGLY FALSE, AND REMAINS DEFAMATORY. WPI'S ATTEMPT TO "TECHNICALLY" ESTABLISH A "THEFT" RELIES ON ITS MYOPIC READING OF A PENAL CODE STATUTE.

Although WPI contends that WSG is engaging in "semantic quibbles", WPI's accusations are serious and clearly stated. No issue of small semantics exists. The most damning of the false statements against Mr. Galaz is that:

> "Galaz did not turn over a new leaf after his release from prison [in 2004]. Instead, he returned to his criminal career as a thief, this time by brazenly stealing television royalties from David Letterman's production company, Worldwide Pants Inc. Galaz admitted under oath during his deposition in this case that WSG misappropriated tens of thousands of dollars from Worldwide Pants. In investigating this case, Worldwide Pants learned that over $325,000 more remains

---

[1] For example, WPI rehashes the details of Raul Galaz's prior criminal conviction. Opp. at 3-4. Such conviction was unrelated to any matter before the Court, has literally nothing to do with WPI, yet WPI inexplicably states that "the facts underlying that scheme relate to this lawsuit" as an excuse to rehash the details thereof.

[2] For example, WPI argues that a 2011 email sent by Raul Galaz demonstrates that "WSG's case should be dismissed because WSG sued after the four-year statute of limitations expired." Opp. at p. 2. WPI made the same argument at the hearing on the motion for summary judgment, to which WSG counsel noted that such argument had been raised *for the first time* at the hearing, was consequently not addressed in WSG's papers (even though it could have been), and remains an inappropriate basis for a grant of summary judgment.

2

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

missing."

WPI motion at p.1.

According to the logic of WPI: (i) WSG's offset of WPI royalties was an "embezzlement", (ii) "embezzlement" is the same as "theft", (iii) Raul Galaz was the WSG representative that corresponded with WPI legal counsel regarding the offset, *ergo* (iv) Raul Galaz is a "thief". For good measure, WPI ignores the fact that it was aware that Raul Galaz has not been an owner of WSG since 2002, concluded his prison term in 2004, became an employee in 2008, and since 2002 has not been a signatory to any WSG financial account. Nonetheless, according to WPI, Raul Galaz *personally* stole hundreds of thousands of dollars from WPI.

What is conveniently ignored in WPI's discussion regarding the "technical" requirements of a "theft" is that "embezzlement" is limited to the "fraudulent" appropriation of property. See CA Penal Code Sections 503, 511. As such, the lack of such prerequisite makes the technical requirements of "embezzlement" inapplicable to WSG's offset of 80% of $60,000 that otherwise was due to WPI. WPI attempts to dismiss the fact that WSG openly discussed with WPI its withholding of the $48,000, with citation to a 1934 decision stating that there may

3

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

still be "embezzlement" even where the appropriation is openly made,[3] but strays from discussing the fact that WSG's withholding was not "fraudulent". That is, WSG had an articulated colorable reason to withhold the monies, a suspicion that discovery in these proceedings has now proven *valid*. What is of primary consideration is whether WSG had a colorable basis to withhold such monies and withheld such monies in good faith – it did.[4]

In fact, although WPI cites various provisions of the California Penal Code, it conveniently ignores the *entirety* of certain cited statutes, such as the following:

> "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated *openly and avowedly*, and under a claim of title preferred in good faith, even though such claim is untenable. But this provision does not excuse the *unlawful* retention of the property of another to offset or pay demands held against him.

CA Penal Code Section 511 (emphasis added). Despite the plain text of the foregoing, WPI misrepresented to the Court that such statute stood for the proposition that "under black letter California law, WSG's offset is a criminal

---

[3] It is nonetheless evident that the active concealment of an appropriation is a significant aspect to the crime of embezzlement, as multiple of the statutory provisions relating thereto require an element of concealment or that the appropriation be "secreted". CA Penal Code Section 503 et seq.

[4] WSG's review of records produced by WPI in discovery has revealed that WPI circumvented WSG's collection of Canadian retransmission royalties, all *without a single instance of communication* to WSG, and fraudulently misdirected the payment of no less than **$2,783,156** by the Copyright Collective of Canada. Such fact validates WSG's 2011 withholding of funds and, in fact, now gives rise to WSG's claim of fraud against WPI. Decl. of Boydston at para. 2.

theft". Opp. at p. 2. Nothing could be farther from the truth. WSG's reasoning for withholding $48,000 from WPI until it received further assurances from WPI's legal counsel, even if "untenable" (which it was not) was in good faith, and WPI makes no attempt to even explain why WSG's retention would be "unlawful". Thus, WPI's tortured attempt to characterize a good faith business dispute as "embezzlement" fails by its own definition.

Second, WPI does not retreat from its allegation that WSG – and Mr. Galaz – stole no less than $325,000 from WPI. As noted in WSG's opposition to WPI's motion for summary judgment, and WSG's motion herein, the predicate of WPI's statement was to conspicuously hide the substance of documents exclusively in WPI's possession *and produced by WPI in discovery* that demonstrate WPI's receipt from WSG of an additional $715,115 from gross collections of $901,307, documents from 1999-2002 that were no longer in WSG's records.[5] Notwithstanding, in order to disguise its malfeasance, WPI maintains *without a*

---

[5] Such financial records comprehensively demonstrate that WSG accounted to WPI for the royalties reported by the CCC as having been distributed to WSG. **CF 45**. WPI omitted financial records in its possession reflecting payment by WSG to WPI from 1999-2002 of $715,115 which, after being grossed up to the amount received by WSG prior to deduction of WSG's commission, equals approximately $900,000. See **Exhibits 20, 21**. Records reflecting such distributions were not in WSG's possession (likely having been lost, misplaced, or destroyed after 15 years) when WSG responded to WPI's document requests in July, 2015, while such records were in WPI's possession and were first produced by WPI in discovery in only February 2016.

*shred of evidence* that WSG's identification of monies received from Canadian sources included $407,000 received for Latin American distributions.

Such fabrication of WPI is unashamedly contrived.[6] The $407,000 paid to WPI for Latin American distributions was paid in January 1999. See **Exh. 3** to R. Galaz Declaration (Opp. to WPI MSJ), attaching check payment. Even a cursory review of WSG's spreadsheet detailing Canadian royalties reflects nothing comparable to a $407,000 payment in or around January 1999, revealing yet another knowing misrepresentation by WPI and its counsel to this Court. See **Exh. 20** to R. Galaz Declaration (Opp. to WPI MSJ). Moreover, the irony of the WPI factual contention, i.e., that WSG "double counted" a $407,000 payment from WSG to WPI, is that such fact *still* would not establish a shortfall in payment to WPI. Specifically, the records that were withheld by WPI demonstrate WSG's payment to WPI of an additional $715,115 on collections of approximately $900,000. Even presuming that the $715,115 included the Latin American $407,000 still demonstrates WSG's payment to WPI of Canadian royalties of no less than an additional $308,115 according to documents withheld by WPI and its

---

[6] WPI accuses WSG of "simply ignoring" WPI's argument that there was a double counting of the Latin American monies. On the contrary, WSG has not ignored such argument – there simply are no facts to support such argument, and all documents show that the January 1999 payment of Latin American royalties does not appear in WSG's spreadsheet of Canadian royalties paid to WPI.

counsel ($715,115 minus $407,000 equals $308,115). Such figure is not remarkably different from WPI's accusation of the "missing $325,000" when WPI failed to account for additional payments reflected in its own records. But again, no discrepancy in accounting can be identified.

WPI *further* fails to respond to the fact that the records of all parties reflect no discrepancy of payments from WSG to WPI from 2002 until the present – collections of $1,362,247 Canadian, and an accounting to WPI of U.S. $1,364,014. **CF 45**. As such, the question is begged as to what post-2004 "thieving ways" of Raul Galaz is WPI referring?

As the foregoing demonstrates, not only does WPI fail to establish the existence of a "theft", the facts reflect that WPI was affirmatively aware of the falsity of its accusation. As such, any discussion regarding whether WSG is or is not the alter ego of Raul Galaz is already mooted. Nonetheless, WPI's description of Raul Galaz's role in WSG, to the exclusion of any description of the dozen other individuals working for or in concert with WSG over its existence, establishes nothing. Indeed, Raul Galaz negotiated WSG's contract with WPI and is the person most knowledgeable therewith. Indeed, Raul Galaz has appeared as an expert witness on WSG's behalf in proceedings before the U.S. Copyright Office, arguing complex statistical analyses for the distribution of cable and satellite retransmission royalties. Indeed, in the course of his employment Raul Galaz has

sent out "form letters" under the name of WSG's owner, Denise Vernon.[7] How such responsibilities are demonstrably different than the actions of *any* senior executive of a company remains unexplained, but such facts definitely do not establish WSG as the "alter ego" of Raul Galaz, a *non-owner* of the company.

### B. WPI'S EXPLANATION AS TO HOW A VARIETY OF MATTERS TANGENTIALLY RELATE TO WSG'S OSTENSIBLE BREACH OF CONTRACT ARE EMBARRASINGLY IRRELEVANT.

As a predicate to its claimed ability to say *anything*, no matter how unrelated to the issues before the Court, WPI engages in a fiction, asserting first that WSG has "conceded that a party complaining of the breach of contract is not entitled to recover therefor unless he has fulfilled his obligations."

Initially, such assertion of law is inconsequential because WSG has fulfilled its contractual obligations,[8] but regardless, such assertion of law is not unqualified,

---

[7] See Exhibit D to M. Dore Decl. WPI also cites to the deposition transcript of Lisa Katona to support its contention that Denise Vernon was "a shell" for Raul Galaz in WSG. It should be noted that Lisa Katona is the ex-wife of Raul Galaz, has not been involved in WSG since 2011, and has been in litigation with Raul Galaz and/or Denise Vernon consistently since June 2007, including presently. Ironically, Ms. Katona was sued by Ms. Vernon in June 2007 for her failure to account to Ms. Vernon for Ms. Vernon's share of WSG profits, and is currently being sued for her failure to account to yet another former WSG partner from 2009 to 2011. In sum, Ms. Katona's credibility and objectivity is lacking in all respects. Decl. of Boydston at para. 3.

[8] In the aggregate, WSG has accounted to WPI for approximately $1.8 Million, on collections of $2.265 Million. [Collections: $407,000 (**Exhibit 3**) + $901,397 + $1,364,014 (**Exhibit 20**) = $2,265,411; Payments: $2,265,411 -

*(Cont'd on next page)*

nor has WSG even addressed this contention.  Nor is WSG's compliance with the agreement even relevant to WPI's obligations under its agreement with WSG, as WPI has never counter-claimed for breach of contract, nor even asserted a breach of contract between 1999 and the present (until the filing of its motion for summary judgment).  Regardless, it is on this statement that WPI hinges its ability to assert that *any* event in *Raul Galaz's* life, if WPI disapproves, is a "breach of fiduciary duty" by WSG.

It is on this basis that WPI contends the following matters are relevant: (i) where Raul Galaz lives, and who he rents from, (ii) whether he has complied with his supervised release reporting obligations, and (iii) the basis on which he sued his criminal co-conspirator.

As is immediately evident, none of the foregoing matters, no matter what the facts are relating thereto, have anything to do with WPI, or WSG's contractual obligations to WPI.  Nevertheless, according to WPI such matters are relevant because "Raul Galaz has repeatedly engaged in conduct that has compromised [WPI's] royalty claims".  Literally no facts are cited to support such comprehensive statement, but WPI maintains that its cited facts are relevant to:

---

*(Cont'd from previous page)*

$60,215 x 80% = $1,764,156.]  WPI nevertheless contends that WSG "has not performed on the 2002 agreement".

(i) WSG's use of funds after it stole money from WPI;[9]

(ii) Raul Galaz's breaches of his criminal judgment while serving as a WSG witness in contested royalty proceedings regarding WPI's claims;[10]

While WPI also seems intent on repeating the circumstances by which Raul Galaz sued his co-conspirator for the return of monies to their victim, there is literally no explanation proffered as to why such 2003 lawsuit has any connection to WPI, WSG's contractual obligations, or WPI's royalty claims. Nothing.

In sum, WPI's statement of the "relevance" is embarrassingly lacking, and for such reason falls squarely within the ambit of "scandalous" statements that must be stricken. To reiterate, the following statements are appropriately stricken:

(i) allegations that 'unnecessarily' question a person's moral character;

(ii) allegations that cast a 'cruelly' derogatory light on a person; and

(iii) vulgar or repulsive allegations that diminish the dignity of the

---

[9] Obviously, if WSG has already established through documents withheld by WPI that there was no "theft" of funds, WSG's use of funds for any purpose is inconsequential.

[10] WPI's assertions are incorrect on multiple levels. WPI's allegation is that Raul Galaz did not inform authorities of his recent change in residence. Why such compliance would have anything to do with any contested royalty proceeding remains unexplained, for the obvious reason that there is no relevance. Moreover, Raul Galaz's last appearance as an expert witness occurred in April 2015, i.e., long prior to his change in residence. But again, why any of these facts have anything to do with WPI's claim that WSG somehow breached its agreement remains unexplained, but again because it is wholly unrelated.

court.

*See* Anderson v. Davis Polk & Wardwell LLP, 850 F.Supp.2d 392, 416 (SD NY 2012), Righthaven LLC v. Democratic Underground, LLC, 791 F.Supp.2d 968, 977 (D NV 2011), and Talbot v. Robert Matthews Distributing Co., 961 F.2d 654, 665 (7th Cir. 1992).  Moreover, the striking of offensive material is particularly appropriate when the offensive material is not responsive to an argument but, rather, constitutes an inappropriate attempt to abuse the Court's process to attack an individual personally. *See*, Magill v. Appalachia Intermediate Unit 08, 646 F. Supp. 339, 343 (W.D. Pa. 1986) (striking allegations that "reflect adversely on the moral character ***of an individual who is not a party to this suit***" which were "unnecessary to a decision on the matters in question"); see also Pigford v. Veneman, 215 F.R.D. 2, 4-5 (D.D.C. 2003)(striking unfounded accusations that opposing counsel was racist); Murray v. Sevier, 156 F.R.D. 235, 258 (D. Kan. 1994) (striking allegation that defendant and his counsel "bought off" and paid "hush money" to prospective witnesses); Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (striking allegation that "defendants are '[l]ike vultures feeding on the dead'"); and Nault's Automobile Sales, Inc. v. American Honda Motor Co., 148 F.R.D. 25, 29-34 (D.N.H. 1993) (noting that "[w]ith each passing week the pleadings assumed a more hostile and accusatory tone" and striking scandalous assertions).

11
PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SANCTION

To the foregoing citations of authority, WPI offers no response other than to assert that all matters in Raul Galaz's life relate to a breach of WSG's fiduciary obligations to WSG.

## CONCLUSION

WSG appreciates the comments of the Court that were made at the recent hearing on WPI's motion for summary judgment, i.e., that the Court did not take the objectionable statements into significant consideration in its analysis. WSG also appreciates that its requested relief is uncommon, and represents to the Court that neither WSG nor its legal counsel have ever requested comparable relief. Nonetheless, obscene and serious false accusations of the nature appearing in WPI's motion for summary judgment are rare. In this instance, such comments were entirely unprovoked and demonstrably false, or reflected outrageously irrelevant (and often false) allegations.

The fact that this Court took little consideration of such accusations provides only a modicum of solace, however, because the fact remains that for the rest of the world the mere allegation of criminal acts will be enough, and the allegations of WPI will be endlessly repeated as though it were fact. When such statements are made with the irresponsibility reflected by WPI and its counsel, e.g., when WPI's own documents disprove any "theft", the only available remedy is that

which has been requested herein – striking the offending language and sanctioning WPI and its counsel.

WSG can affirmatively establish the falsity of WPI's allegation of theft both by WSG and Mr. Galaz. WPI can provide no rational basis for its parade of irrelevant claims regarding Mr. Galaz. All of these allegations squarely fall into the category of "scandalous" accusation, and if not for the redress afforded by this Court, no redress exists. No person or entity deserves to have a knowingly false allegation of theft stand against them without sanction to the offending party.

Dated: September 20, 2016                    PICK & BOYDSTON, LLP


                                              By_____/s/_____
                                                  Brian D. Boydston
                                              Attorneys for Plaintiff
                                              WORLDWIDE SUBSIDY GROUP, LLP